United States District Court
Southern District of Texas
**ENTERED**
March 29, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

AEGIS SECURITY INSURANCE           §
COMPANY,                           §
                                   §
        Plaintiff,                 §
                                   §
v.                                 §        Civil Action No. H-23-303
                                   §
CYNTHIA MICHELL YELL,              §
                                   §
        Defendant.                 §

<u>MEMORANDUM AND ORDER</u>

Pending is Plaintiff Aegis Security Insurance Company's ("Aegis") Motion for Summary Judgment ("Motion") (Document No. 24) ("Motion"), to which Defendant Cynthia Michell Yell filed no response in opposition. The Motion is therefore deemed unopposed pursuant to Local Rule 7.4. After considering the Motion, the evidence, and applicable law, the Court will grant the Motion.

I.   <u>Background</u>

This is an insurance dispute arising from a historical freeze event, attributed to a polar vortex, that engulfed the entire State of Texas February 11-20, 2021. Yell's home, like many others, suffered severe water damages caused by a pipe burst,[1] and Yell

---

[1] Document No. 24, App'x 069-074; *see also* Document No. 1 at ¶¶ 8, 10; Document No. 8 at ¶¶ 8, 10.

filed a claim on her homeowners' insurance policy to recoup the loss.[2]   Aegis received and referenced the claim as Claim No. 832099.[3]

Aegis had issued Texas Homeowners Policy, No. KOP60028891/R02, insuring Yell's home from July 23, 2020 to July 23, 2021 ("Policy").[4]   The Policy was a "named perils" policy, which insured against physical loss to the property caused by a Section I peril.[5]   Except for certain water related perils covered by Endorsement MS HO 90, the Policy's liability limits for losses caused by a Section I peril were $204,900 for the dwelling, $82,000 for personal property, and $20,500 for loss of use.[6]   Included as part of the Policy was Texas Homeowners Amendatory Endorsement MS HO 90 adding under Section I certain water related perils; as to the added water perils relevant here, Aegis's liability was limited to $5,000, referred to as a sublimit.[7]   The sublimit

---

[2] *See* Document No. 24, App'x 072; *see also* Document No. 1 at ¶ 8; Document No. 8 at ¶ 8.

[3] *See* <u>id.</u>

[4] Document No. 24, App'x 019.

[5] <u>Id.</u> at App'x 028.

[6] <u>Id.</u> at App'x 019.

[7] <u>Id.</u> at App'x 019, 047.

provided in a standard MS HO 90 Endorsement is $1,500, but Yell's sublimit was increased to $5,000 for an additional premium of $80.[8]

Aegis engaged Coast to Coast Claim Services, LLC ("CCCS") to assess Yell's loss.[9]  CCCS's agent promptly contacted Yell to arrange an inspection.[10]  Days later, they met at the property.[11] Following the inspection, CCCS stated in its Loss Report for "Cause & Origin" that this "loss was report [sic] as water damage from broken pipe in attic due to heavy freeze to the risk, with a loss date of 2/22/2021."[12]  The water intrusion due to the pipe burst caused damage to multiple rooms and to the attic's insulation.[13] CCCS recommended payment to Yell in the amount of $5,000, the Policy's sublimit for an above slab leak.[14]  CCCS discovered no damages to the home's exterior.[15]

Within a month of the loss, Aegis acknowledged Yell's claim for water damages to her property, found that the damages exceeded

---

[8] Id.

[9] Id. at App'x 069.

[10] Id.

[11] Id.

[12] Id.

[13] Id. at App'x 070; Document No. 8 at ¶ 10.

[14] Document No. 24, App'x 069-071.

[15] Id. at App'x 069.

the $5,000 sublimit, and issued payment to Yell for the policy
limit.[16] Yell admits that Aegis paid her the $5,000 sublimit for
damage from a sudden and accidental discharge of water, but Yell
contends--without summary judgment evidence or any rationale--that
the $5,000 did not satisfy Aegis's liability under the Policy.[17]
Thus, Aegis filed this suit asking the Court to declare that
Aegis's liability for Claim No. 832099 was satisfied by Aegis's
payment of the $5,000.[18] No counterclaim has been filed, and Aegis
now moves for summary judgment on its claim for declaratory relief.

## II.  Standard

Under Rule 56, "[t]he court shall grant summary judgment if
the movant shows that there is no genuine dispute as to any
material fact and the movant is entitled to judgment as a matter
of law." FED. R. CIV. P. 56(a). The party moving for summary
judgment "always bears the initial responsibility of informing the
district court of the basis for its motion, and identifying those
portions of the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any, which it believes demonstrate the absence of

---

[16] _Id._ at App'x 072-074.

[17] _Id._ at App'x 058, 068; Document No. 8 at ¶ 10.

[18] Document No. 1 at 7.

a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986) (quotation marks omitted). The movant meets its initial burden by demonstrating "the absence of a genuine issue of material fact" and that it is entitled to judgment as a matter of law. *See* Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting Celotex, 106 S. Ct. at 2553).

Once the movant carries this burden, the burden shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Id. (citing Celotex, 106 S. Ct. at 2553-54). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). The court must consider the cited materials but may also consider other materials in the record. FED. R. CIV. P. 56(c)(3). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915-16 & n. 7 (5th Cir. 1992)); *see also* Malacara v. Garber, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the

nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." (citing cases)).

In considering a motion for summary judgment, the court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993). On the other hand, if the factfinder could reasonably find in the nonmovant's favor, then summary judgment must be denied. Id.

## III. Discussion

As observed above, Aegis seeks a declaratory judgment that its liability for Yell's claim--Claim No. 832099--was satisfied by Aegis's payment of $5,000.[19] The Court "may declare rights and other legal relations of any interested party seeking such declaration" in "a case of actual controversy within its

_____

[19] Document No. 1 at 7.

jurisdiction." *See* 28 U.S.C. § 2201(a).  The Court has diversity jurisdiction over the case.[20]  *See* 28 U.S.C. § 1332(a)(1), (c).

"Under Texas law, insurance policies are interpreted in accordance with the rules of construction that apply to all contracts generally."  <u>Sharp v. State Farm Fire & Cas. Ins. Co.</u>, 115 F.3d 1258, 1260 (5th Cir. 1997) (citation omitted).  Although ambiguities in insurance contracts are strictly construed against the insurer, "this rule of strict construction applies *only* if the contract is determined to be ambiguous."  <u>Id.</u> at 1260-61 (emphasis in orig.).  Thus, the Court looks first to the language of the contract itself, and if the language is unambiguous, the Court must "hold the parties to the plain terms of the contract to which they have agreed[.]"  <u>Id.</u> at 1261, 1263.

The relevant terms of the Policy are as follows:

SECTION I – PERILS INSURED AGAINST

COVERAGE A (DWELLING) AND
COVERAGE B (PERSONAL PROPERTY)

We insure against physical loss to the property described in Coverage A (Dwelling) and Coverage B (Personal Property) caused by a peril listed below, unless the loss is excluded in Section I Exclusions.

1. Fire and Lightning.

2. Sudden and Accidental Damage from Smoke. . . .

3. Windstorm, Hurricane and Hail. . . .

---

[20] <u>Id.</u> at ¶¶ 1-4.

7

4. Explosion.

   This peril does not include loss caused by or resulting from:

      a. Breakage of water, sewage or steam pipes or any component of a plumbing system.

      b. Freezing of plumbing, heating or air conditioning systems or household appliances

      c. Discharge, leakage or overflow of water, sewage or steam from within a plumbing, heating or air conditioning system or household appliance.

5. Aircraft and Vehicles. . . .

6. Vandalism and Malicious Mischief.

7. Riot and Civil Commotion.

8. Theft . . . .[21]

Also included in the Policy was Texas Homeowners Amendatory Endorsement MS HO 90 Additional Perils Coverage with Limited Water Coverage, the relevant portions of which are as follows:

   For the premium charged, under Section 1 – PERILS INSURED AGAINST, we insure direct loss to property described In COVERAGE A (DWELLING) and COVERAGE B (PERSONAL PROPERTY) caused by the additional perils listed below.  But we do not cover a loss that is excluded in the EXCLUSIONS section of this endorsement or in the EXCLUSIONS section of the policy.

      1. Sudden and accidental discharge or overflow of water or steam from within any portion of a plumbing system that is above the surface of the ground and is above and outside the slab or foundation, or from an air conditioning system that is above the surface

-----

[21] Document No. 24, App'x 019-020, 028, 039-040 (Policy as amended by Endorsement MS HO 29).

> of the ground and is above and outside the slab or
> foundation, or from within a household appliance.
>
> . . .
>
> Our total limit of liability for any loss caused by
> this peril is $1,500.
>
> This is not additional insurance.  It is included
> in the limit of liability of COVERAGE A (DWELLING)
> and COVERAGE B (PERSONAL PROPERTY).
>
> . . .
>
> For an additional premium, you may select a higher limit
> of liability for any loss caused by peril 1. or peril 2.
> listed above.  If selected, the higher limit of liability
> for these perils will be shown on the declarations page
> as ADDITIONAL PERILS COVERAGE.[22]

As observed above, Yell increased the liability amount on Perils

#1 and #2 from $1,500 to $5,000, for which she paid an additional

premium of $80.[23]

The uncontroverted summary judgment evidence is that Yell's

loss was caused by and resulted from a frozen pipe in the attic

that burst and flooded the home's interior[24] and that Aegis paid

Yell the $5,000 Policy limits for loss resulting from a sudden and

accidental discharge of water from within the plumbing system.[25]

---

[22] Id. at App'x 019, 047.

[23] Id.

[24] Id. at App'x 069-071; Document No. 1 at ¶¶ 8, 10; Document No. 8 at ¶¶ 8, 10.

[25] Document No. 24, App'x 058, 072-074; Document No. 1 at ¶ 10; Document No. 8 at ¶ 10.

A burst water pipe is not a Section I named peril covered by the Policy's higher liability limits.[26] Yell fails to cite any evidence that a Section I named peril to which the Policy's higher liability limits applied was the cause of any damage to her home. *See* Guar. Nat. Ins. Co. v. Vic Mfg. Co., 143 F.3d 192, 193 (5th Cir. 1998) ("The insured bears the initial burden of showing that there is coverage"). There is no genuine issue of material fact to be tried, and Aegis is entitled to summary judgment as a matter of law.

## IV.   Order

For the foregoing reasons, it is ORDERED that Plaintiff Aegis Security Insurance Company's Motion for Summary Judgment (Document No. 24) is GRANTED, and it is DECLARED that Plaintiff Aegis Security Insurance Company's contractual liability under Texas Homeowners Policy No. KOP60028891/R02, insuring the residence of Defendant Cynthia Michell Yell, for the losses sustained by Defendant Yell to her insured property in February 2021, reported under Aegis Claim No. 832099, was satisfied and fully discharged by Aegis's payment to Defendant Yell of $5,000.

---

[26] *See* Document No. 24, 028-029, 040.

A Final Judgment will be entered separately.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED at Houston, Texas, on this 29TH day of March, 2024.


EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE